<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
JACOB TRAVIS,                       :
                                    :   Civil Action No. 14-2465 (RMB)
            Plaintiff,              :
                                    :
      v.                            :   **<u>OPINION</u>**
                                    :
DYLAN HUTTON, et al.,               :
                                    :
            Defendants.             :
_____ :

**BUMB, District Judge:**

This matter comes before the Court upon Plaintiff's submission of a civil complaint ("Complaint") and his application to proceed in this matter <u>in forma pauperis</u>. <u>See</u> Docket Entries Nos. 1 and 1-2. For the reasons detailed below, Plaintiff will be granted <u>in forma pauperis</u> status, and his Complaint will be dismissed with a narrowly-tailored leave to amend.

The Complaint is exceedingly lengthy, being 98 pages.[1]

---

[1] Therefore, the Complaint violates Rule 8(a) of the Federal Rules of Civil Procedure which requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Each litigant is obligated to plead his/her facts succinctly, stating a plausible basis for liability, <u>see</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n. 12 (3d Cir. 2004), and "[d]istrict courts should not have to read and decipher tomes disguised as pleadings." <u>Lindell v. Houser</u>, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006); <u>see also</u> <u>Venezia v. Union Cnty. Prosecutor's Office</u>, 2011 U.S. Dist. LEXIS 58043 (D.N.J. May 31, 2011) (dismissing a complaint because the allegations were not short, plain and concise, and the complaint "present[ed] a dense rambling thicket of statements over the course of fifty-five pages"); <u>Murakush Caliphate of Amexem Inc. v. New Jersey</u>, 790 F. Supp. 2d 241, 266 (D.N.J. 2011) ("To put

The best this Court can surmise, it appears that Plaintiff, a pre-trial detainee, was arrested on September 2, 2013, <u>of the Labor Day weekend.</u>  It also appears that: (a) the arrest was executed by Officer Hutton ("Officer Hutton"), a Patrolman with the Egg Harbor City Police Department ("Police Department"); (b) for the purposes of that arrest, Officer Hutton executed a criminal complaint, which was reviewed by his colleague, Officer Kramer ("Officer Kramer"); and (c) to effectuate the arrest, the Police Department procured a telephonic arrest warrant.  <u>See</u>, <u>generally</u>, Docket Entry No. 1.  Office Hutton's complaint reads:

> [Plaintiff] did commit the act of aggravated assault by causing serious bodily injury to another, specifically[,] by body slamming the victim "S.R." to the ground; inflicting serious bodily injury, broken collar bone, two partially collapsed lungs and a broken right ring finder.  The victim had to seek emergency hospital treatment.  Warrant was telephonically approved by J.M.C. William Cappuccio on 09/02/2013 at 16:20 hours.

<u>Id.</u> at 27 (dated as of September 2, 2013).[2]

The Complaint does not challenge Officer Hutton's statements that Plaintiff assaulted S.R. or that S.R. suffered serious bodily injuries.  <u>See</u> <u>generally</u>, Docket Entry No. 1.

---

the span of [Plaintiff's submission] in perspective, it [was] much like [his] version of Leo Tolstoy's 'War and Peace'") (quoting <u>Mann v. GTCR Golder Rauner L.L.C.</u>, 483 F. Supp. 2d 884, 891 (D. Ariz. 2007), original brackets omitted).

[2]  Since Officer Hutton's complaint detailed the injuries suffered by S.R. and the fact that S.R. had to seek emergent medical treatment at a hospital, it appears that either S.R. or the hospital alerted the Police Department about the assault.

Rather, the Complaint indicates that, eventually, Plaintiff began to speculate that Officer Hutton must have falsified the fact that Magistrate Judge William S. Cappuccio.[3] It appears that Plaintiff's speculation is based on on his impression that had Judge Cappuccio been contacted by Officer Hutton, Judge Cappuccio would have directed Plaintiff's release on bail without holding a bail hearing. See id. at 5-7.

On the basis of that speculation, Plaintiff executed a letter invoking the Open Public Records Act ("OPRA"), Pub. L. 2001, c. 404 (N.J.), and seeking production of the transcript of the phone call between Officer Hutton and Judge Cappuccio, as well as the transcripts of Plaintiff's first post-arrest court appearance (on September 18, 2013) and the following proceeding of December 18, 2013.[4] See id. at 9. Allegedly, Plaintiff sent this letter to Officer Czerwinski ("Officer Czerwinski") who performs clerical tasks for the Egg Harbor Police Department. See id. at 9. The Complaint indicates that, upon getting no response from Officer Czerwinski, Plaintiff deduced that his speculations about Officer Hutton's falsification of the

---

[3] Judge Cappuccio is an attorney who, in addition to his private practice, served as a Magistrate Judge with the Buena Vista Division of the Atlantic County Municipal Courts issued a telephonic warrant for Plaintiff's arrest.

[4] The basis of Plaintiff's belief that Officer Hutton's phone call to Judge Cappuccio was recorded and transcribed is not immediately clear to this Court.

complaint had to be correct.  With that, he commenced the instant matter naming Officers Hutton, Kramer and Czerwinski as Defendants and stating, in a conclusory fashion, that these Defendants violated his rights by causing his arrest without a proper warrant.  See generally, Docket Entry No. 1.

While the factual allegations stated in the Complaint are scarce and the bulk of the pleading is dedicated to Plaintiff's conclusory statements that his rights were violated and recitals of Fourth Amendment law, the Equal Protection Clause and the Thirteen Amendment, one part of the Complaint listing the damages Plaintiff seeks is highly detailed.  It states:

| | |
|---|---|
| Arbitrary arrest | 5 million $ |
| Mental Anguish | 4 million $ |
| Cruel and Unusual Punishment | 5 million $ |
| Kidnapping | 5 million $ |
| Human Trafficking | 4.5 million $ |
| Emotional distress | 3.5 million $ |
| Hostage | 2.5 million $ |
| Slander | 2.5 million $ |
| Punitive Damages | 2.5 million $ |
| Duress | 3 million $ |
| Compensatory Damages | 4 million $ |
| Total | 44.5 million $ |

Docket Entry No. 1, at 17-18 (capitalization and lack thereof in original).[5]  In addition, Plaintiff "request[s] to be released from imprisonment immediately."  Id. at 18.

As drafted, the Complaint fails to state a viable claim. An arrest conducted pursuant to a valid warrant is deemed an arrest conducted upon a probable cause if the arrestee is the person identified in the warrant.  See Pitman v. Ottehberg, 2013 U.S. Dist. LEXIS 140564 (D.N.J. Sept. 30, 2013) (probable cause for arrest exists starting the time the warrant is issued); compare Whiteley v. Warden, 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1970) (holding that an erroneously issued warrant cannot provide probable cause).  Here, Plaintiff speculated that his arrest was executed upon a warrant not sanctioned by Judge Cappuccio.  However, Plaintiff's speculations cannot support a viable claim.  "[A]llegations must be enough to raise a right to

---

[5] While this Court construes Plaintiff's reference to an "arbitrary arrest" as a claim asserting a Fourth Amendment false arrest claim, that claim is indistinguishable and cannot exist separately from his claim for compensatory and punitive damages. Eighth Amendment protections against cruel and unusual punishment apply to convicted individuals, not to pre-trial detainees like Plaintiff.  State law tort claims of emotional distress, slander and duress: (a) cannot supply federal jurisdiction and could be litigated only under supplemental jurisdiction supplied by a finding of subject matter jurisdiction; and, in addition (b) only if the litigant asserts a factual predicate to support those claims, which is not the case here.  And while this Court could excuse these errors in light of Plaintiff's pro se litigant status, Plaintiff's statement that an arrest by police officers could qualify as "kidnapping" and "human trafficking," or as taking one "hostage." are patently frivolous.

relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[W]here the []pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief") (internal quotation marks omitted). Simply put, Plaintiff is obligated to plead the facts showing that Judge Cappuccio did not authorize his arrest. Plaintiff's bare and wholly unsupported belief that Officer Hutton must have concocted a devious scheme would not do.

Moreover, it is not always necessary for a police officer to procure a warrant prior to effectuating an arrest. "The proper inquiry in a Section 1983 claim based on false arrest is . . . whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). "When an officer has probable cause to believe a person committed even a minor crime, the balancing of private and public interests is not in doubt and the arrest is constitutionally reasonable." Virginia v. Moore, 553 U.S. 164, 171 (2008). Thus, a plaintiff must state "the facts showing that, under the circumstances within the officer's knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested." Mosley v. Wilson, 102 F.3d 85, 94-5 (3d Cir. 1996);

6

accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010).

Here, it appears that Officer Hutton: (a) was informed about Plaintiff's assault of S.R. shortly prior to the arrest (since it appears that the Police Department was contacted by S.R. or the hospital treating S.R. right after the assault); (b) had a valid reason to believe that Plaintiff had just committed an offence; and (c) executed the arrest upon a proper balancing of private and public interests.  If so, Officer Hutton did not need an arrest warrant to take Plaintiff in custody.  See Moore, 553 U.S. at 171.  Therefore, Plaintiff's claims against Officer Hutton, as stated, are subject to dismissal.  However, out of an abundance of caution, this Court will allow Plaintiff an opportunity to amend his claims against Officer Hutton by asserting Plaintiff's facts *plausibly showing* that: (a) a substantial period of time elapsed between Plaintiff's assault of S.R. and Plaintiff's arrest; and (b) Officer Hutton did not obtain a telephonic warrant from Judge Cappuccio authorizing Plaintiff's arrest. Only if Plaintiff states such *facts*, rather than his self-serving bold conclusions, speculations or recitals of the elements of a Fourth Amendment claim, Plaintiff's false arrest challenges against Office Hutton could be deemed viable.[6]  See Iqbal, 556

---

    [6] Notably, the period of false arrest and imprisonment is very short: a claim under § 1983 for false imprisonment based on

U.S. 662, 678 (2009) ("a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'").

Plaintiff's claims against Officer Kramer are analogously subject to dismissal unless Plaintiff asserts *facts* showing that: (a) Officer Hutton conducted a false arrest; and (by Officer Kramer actually facilitated that arrest by his mere review of Officer Hutton's complaint.

Plaintiff's allegations against Officer Czerwinski are subject to dismissal with prejudice, as facially meritless.  Even under state law, neither the Police Department nor the officer had a duty to provide Plaintiff with any transcripts (if they were in existence) or even to respond to Plaintiff's letter.  A fortiori, Officer Czerwinski could not violate Plaintiff's constitutional rights by ignoring his mailing.[7]

---

a detention pursuant to that arrest, applies only to the period of incarceration lasting from the moment of arrest until the first legal action, e.g., an arraignment or first court appearance.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).  The Supreme Court explained that, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter," Wallace v. Kato, 549 U.S. 384, 388 (2007), and the damages recoverable under such claims are limited to those ensuing from the period of detention until the first legal action.  See Connelly v. Wren, 2013 U.S. Dist. LEXIS 1190 (D.N.J. Jan. 4, 2013).  Here, the Complaint asserts that Plaintiff's first court appearance took place on September 18, 2013.

[7] If Plaintiff wished to review/discuss these transcripts, his request should have been directed at his defense counsel.  A failure to respond to an inmate's letter "does not violate his

Plaintiff's application for release from confinement is subject to dismissal for lack of jurisdiction, see Preiser v. Rodriguez, 411 U.S. 475, 476, 500 (1973); Wilkinson v. Dotson, 544 U.S. 74, 81 (2005); Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Similarly, his request for this Court's intervention in Plaintiff's state criminal proceedings is barred under the abstention doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971). See Acra Turf Club, LLC v. Zanzuccki, 2014 U.S. App. LEXIS 5886 (3d Cir. Mar. 31, 2014).

Thus, Plaintiff's request for release or intervention in his state criminal proceedings will be denied. His claims against Officer Czerwinski will be dismissed with prejudice, as not amenable to cure by re-pleading. His claims against Officers Hutton and Kramer will be dismissed without prejudice.[8] However,

---

rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 F. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)). Analogously, "the First Amendment does not impose any affirmative obligation on the government to listen [or] respond." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); Minnesota State Bd. Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications").

[8] In addition, the Complaint suggested that Plaintiff's counsel was seeking dismissal of Plaintiff's indictment on the grounds of invalidity of Plaintiff's arrest/lack of a proper warrant. See Docket Entry No. 1, at 11. The Complaint stated that the state court was to hold a hearing on that matter on April 1, 2014, that is, two and a half weeks prior to the date of

this Court's leave to amend is narrow since Plaintiff's amended complaint, if filed, would have to state, clearly and concisely, Plaintiff's *facts* showing that Officers Hutton and Kramer violated his Fourth Amendment rights within the meaning of the governing legal regime as explained in this Opinion.[9]

An appropriate Order follows.

                                                  s/Renée Marie Bumb
                                                  **RENÉE MARIE BUMB**
                                                  **United States District Judge**

Dated: April 30, 2014

---

the Clerk's receipt of the Complaint.  See id.; see also Docket Entry No. 1-1.  Thus, it appears that the Complaint was submitted after and as a result of an adverse determination reached by the state court with regard to Plaintiff's attack on the warrant underlying his arrest.  If so, his claims against Officers Hutton and Kramer are barred by the Rooker-Feldman doctrine which provides that federal courts lack subject matter jurisdiction to sit in direct review of state court decisions, see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), if the success in the federal suit would call the state court's judgment into question.  See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (the doctrine deprives federal courts of subject-matter jurisdiction over claims when the federal plaintiff lost in state court, the state judgment was rendered before the federal suit was filed, and the plaintiff is inviting the district court to review and reject the state judgment) (citation and quotation marks omitted).

    [9] Plaintiff's claims seeking monetary relief other than his claims for compensatory and punitive damages on the basis of his Forth Amendment challenges will be dismissed with prejudice for lack of factual predicate.